IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-00910-SRB |
| | ) | |
| FERRELLGAS, INC., | ) | |
| JAMES FERRELL, and | ) | |
| PAMELA BRUECKMANN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendants' Motion to Dismiss or, in the Alternative, Stay This Case and Compel Arbitration. (Doc. #14). For the reasons stated below, Defendants' motion is GRANTED in and DENIED in part.

I. **BACKGROUND**

In August 2018, Defendants Pamela Brueckmann and James Ferrell recruited Plaintiff Jacqueline Morgan to join Defendant Ferrellgas, Inc. ("Ferrellgas") as a member of its executive team. Ferrellgas is a nationwide propane gas supplier. At all times relevant to this case, Ferrell was president, interim CEO, and chairman of Ferrellgas' board of directors, and Brueckmann was a member of Ferrellgas' board of directors. After executing an Employment Agreement on September 27, 2018, Morgan began work as the Chief Marketing and Sales Officer at Ferrellgas. She remained in that role until her termination in January 2019. Morgan submitted her claim of gender-based discrimination to the Missouri Commission on Human Rights ("MCHR") and received a right-to-sue letter on September 16, 2019.

On September 26, 2019, Morgan filed a petition[1] in the Circuit Court of Clay County, Missouri, against Ferrellgas, Ferrell, and Brueckmann (collectively, "Defendants"). Defendants were served on October 14, 2019, and subsequently removed the case to federal court pursuant to diversity jurisdiction on November 13, 2019. Defendants filed a motion to dismiss the case or, in the alternative, stay the case and compel arbitration. Morgan's first amended complaint raises six causes of action: (1) Count I: Gender Discrimination under the Missouri Human Rights Act ("MHRA"); (2) Count II: Retaliation (MHRA); (3) Count III: Fraudulent Misrepresentation; (4) Count IV: Fraudulent Misrepresentation by Omission; (5) Count V: Negligent Misrepresentation; and (6) Count VII: Negligence Misrepresentation by Omission.

Morgan alleges Ferrellgas, its agents, and its employees—including Ferrell and Brueckmann—misrepresented to her the company's ongoing, internal power struggle during the recruitment process. Morgan claims those misrepresentations and omissions misled her and induced her to join Ferrellgas in the midst of a hostile takeover by members of its own executive team. Defendants argue that Morgan's claims arise from her employment with Ferrellgas and are subject to a binding arbitration provision contained in an Employment Agreement signed by Morgan. The operative provision of that Employment Agreement reads as follows:

> Any dispute (whether the dispute sounds in contract, tort, or otherwise) arising out of or relating to this Agreement or its breach, or the employment relationship of the parties, except injunctive relief to preserve the status quo, shall be fully and finally settled by binding arbitration conducted expeditiously in accordance with this paragraph, the United States Arbitration Act (to the exclusion of any provisions of state law inconsistent with the Act or which would produce a different result), and the Center for Public Resources Rules for Non-Administrative Business Disputes (1989) by three independent and impartial arbitrators.

---

[1] The Court will hereinafter refer to this initial pleading as "complaint" in order to correspond with the terminology used in the Federal Rules of Civil Procedure.

(Doc. #15-3, p. 2). Below this arbitration language is a written statement acknowledging that the Employment Agreement "contains a binding arbitration provision which may be enforced by the parties." (Doc. #15-3, p. 2). Both Morgan and a Ferrellgas representative signed the arbitration-provision acknowledgement on September 27, 2018. Morgan does not dispute that she signed the Employment Agreement but contests its validity. Morgan additionally argues that Brueckmann and Ferrell are not signatories to the Employment Agreement and that her individual claims against them are not subject to arbitration.

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") "provides that '[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (quoting 9 U.S.C. § 2). "The Supreme Court has stated repeatedly that this provision establishes a 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4). "The FAA establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster v.*

*Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (citations and internal quotation marks omitted).

"When presented with a motion to compel arbitration, we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *McFadden v. Van Chevrolet-Cadillac, LLC*, No. 18-00395-CV-W-BP, 2018 WL 3715756, at *1 (W.D. Mo. Aug. 3, 2018) (citation omitted). As a federal district court sitting in Missouri, this Court must analyze an arbitration agreement based on Missouri state-law principles. *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016). "The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Baier v. Darden Restaurants*, 420 S.W.3d 733, 737 (Mo. App. W.D. 2014) (citation and internal quotation marks omitted). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Jackson v. Higher Educ. Loan Auth. of Missouri*, 497 S.W.3d 283, 287 (Mo. App. E.D. 2016) (citing *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 683 (Mo. App. E.D. 2015)). "Generally, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Lyster*, 239 F.3d at 945 (internal quotation marks and citations omitted).

**III. DISCUSSION**

**A. Existence of a Valid Arbitration Agreement Against Defendant Ferrellgas**

The parties dispute the existence of a valid arbitration agreement. Defendants argue the arbitration provision at issue is a valid bilateral contract supported by consideration. Defendants contend that the parties exchanged mutual promises to arbitrate any disputes arising out of the

4

Employment Agreement or the employment relationship between the parties, and that neither party retained the right to unilaterally modify the agreement. Morgan argues language included in the arbitration provision stating that any resulting arbitration will be conducted in accordance with the Center for Public Resources ("CPR") Rules for Non-Administrative Business Disputes gives Ferrellgas the right to unilaterally modify the arbitration agreement, making its promise to abide by the agreement illusory. Morgan does not dispute her acceptance of the arbitration agreement or its terms, nor does she contend the arbitration agreement is unenforceable.

"A contract consisting of mutual promises to undertake some legal duty or liability between parties is a bilateral contract." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 116 (Mo. banc 2018) (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. banc 2014)). Under Missouri law, a mutual exchange of promises to arbitrate is sufficient consideration so long as those promises are not illusory. *Id.* "A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." *Id.* (quoting *Baker*, 450 S.W.3d at 776). In an employment context, an arbitration agreement which permits the employer to unilaterally modify the terms of the arbitration agreement without notice to employees may render the employer's promise to arbitrate illusory. *See, e.g.*, *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 742 (Mo. App. W.D. 2011).

The Court finds the arbitration agreement at issue is supported by consideration. The arbitration provision language expressly reflects the agreement of both parties to submit to arbitration "any dispute (whether the dispute sounds in contract, tort, or otherwise) arising out of or relating to this [Employment] Agreement or its breach, or the employment relationship of the parties." (Doc. #15-3, p.2). Nowhere in the arbitration provision is there language indicating Ferrellgas retains the ability to unilaterally modify the arbitration agreement. The Employment

5

Agreement itself does not allow any modifications unless "made in writing and signed by both parties." (Doc. #15-3, p.3). Morgan's argument that CPR's ability to amend its own arbitration rules and procedures somehow renders Ferrellgas' promise to arbitrate illusory is unconvincing. Morgan provides no case law indicating an arbitration agreement may be held unenforceable because the arbitration association slated to conduct the arbitration might, at some point, amend its own rules. Indeed, such a holding would potentially render all arbitration clauses invalid. Further, the Court is not persuaded that Ferrellgas' promise is rendered illusory by Morgan's inability to predict at the onset of her employment if or when disputes may arise and which arbitration rules might govern those disputes. Thus, the Court finds the arbitration agreement to be valid and enforceable by Ferrellgas against Morgan.

### B. Scope of the Arbitration Agreement with Ferrellgas

Regarding whether the dispute falls within the terms of the arbitration agreement, "[u]nder the Federal Arbitration Act, we generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship, and we compel arbitration of such claims." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499–500 (8th Cir. 2007). The party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Owner-Operator Indep. Drivers Ass'n., Inc. v. United Van Lines, LLC*, No. 4:06CV219JCH, 2006 WL 5003366, at *2 (E.D. Mo. Nov. 15, 2006) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 532 U.S. 79, 91 (2000)).

Defendants argue that Morgan's gender-based discrimination claims arise from conduct allegedly occurring during the course of her employment at Ferrellgas. As to Morgan's tort claims, Defendants argue those claims arise from statements allegedly made (or not made) by Ferrellgas employees and that Morgan purportedly relied upon those claims in accepting her

employment offer. Morgan does not respond to Defendants' argument, nor does she dispute Defendants' contention that her claims arise from or relate to either the Employment Agreement or the employment relationship. Because Morgan bears the burden of proof, and because any doubts regarding the scope or applicability of arbitrable issues should be resolved in favor of arbitration, this Court finds all of Morgan's claims against Ferrellgas to be within the scope of the arbitration agreement. *See Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 298 (2010) (citation and internal quotation marks omitted) ("any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration"). As to Morgan's *individual* tort claims against Ferrell and Brueckmann, those claims are discussed below.

**C. Standing of Defendants Ferrell and Brueckmann to Enforce Arbitration Agreement**

Defendants Ferrellgas, Ferrell, and Brueckmann jointly move to compel arbitration of all Counts raised in Morgan's amended complaint. Morgan argues her individual tort claims against Ferrell and Brueckmann are not subject to arbitration because no contract to arbitrate exists between her, Ferrell, and Brueckmann, and that neither Ferrell nor Brueckmann are third-party beneficiaries to her agreement with Ferrellgas. Defendants agree that Ferrell and Brueckmann did not sign the arbitration agreement but contend that Morgan's individual claims against them relate solely to actions taken in their official capacity as Ferrellgas employees, thereby enabling them to enforce Ferrellgas' arbitration agreement as non-signatories.

"Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003). While the FAA favors resolution of disputes by enforcement of arbitration agreements, that policy alone is not enough "to extend an arbitration agreement beyond its intended scope." *Tucker v. Vincent*, 471 S.W.3d 787, 794 (Mo. App. E.D. 2015)

7

(quoting *Bellemere v. Cable-Dahmer Chevrolet, Inc.*, 423 S.W.3d 267, 276 (Mo. App. W.D. 2013)). Recent Supreme Court decisions emphasize the need for an affirmative contractual basis to compel arbitration, noting arbitrators "derive their powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (internal quotation marks and citations omitted). Similarly, the Eighth Circuit recently acknowledged that "silence does not provide a sufficient basis for concluding that the parties agreed to [] arbitration." *Catamaran Corp. v. Towncrest Pharmacy*, No. 17-3501, slip op. at *4–*5 (8th Cir. Jan. 10, 2019) (citing *Lamps Plus*, 139 S. Ct. at 1416–17) (discussing contractual basis for consent to arbitration in a class action context).

Under Missouri law, "'[o]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract.'" *See Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (citing *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)). Non-signatories can enforce an arbitration agreement only in narrow, limited circumstances. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010). "[A] non-signatory can enforce an arbitration clause against a signatory (1) 'when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided;' or (2) 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory.'" *Tucker*, 471 S.W.3d at 796 (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)).

The Court finds Ferrell and Brueckmann lack standing to compel arbitration of Morgan's individual tort claims against them. In support of their position that denying arbitration would

eviscerate the arbitration agreement, Defendants rely heavily upon the Eighth Circuit's holding in *CD Partners*. In *CD Partners*, the Eighth Circuit found the claimant's individual tort actions against several non-signatory executive officers of the corporate-defendant were subject to arbitration because of "close relationship" between the corporate signatory and the non-signatory parties. 424 F.3d at 798–99. However, in *CD Partners* the Eighth Circuit observed the alleged torts by the non-signatory parties "arise out of and relate directly to the contractual agreement between the signatories," and determined that the "core of the dispute is the conduct of the three nonsignatories in fulfilling" the corporate-signatory's *contractual* promises. *Id.* at 800 (emphasis added). The situation here is distinguishable.

Morgan's common-law tort claims against Ferrell and Brueckmann are based on various misrepresentations, statements, and omissions they allegedly made *prior* to the commencement of Morgan's employment. Specifically, Morgan alleges that Ferrell and Brueckmann failed to disclose the ongoing power struggle within Ferrellgas or that members of executive team were actively planning a hostile takeover. Morgan, who owned her own company prior to joining Ferrellgas, claims that neither Ferrell nor Brueckmann disclosed the company's internal strife even after she informed them that she would have to sell her own company if she accepted the position. These alleged misrepresentations and omissions predate Morgan's employment and are not "so intertwined" with the terms of her Employment Agreement that she must rely upon that contract in asserting them. *See, e.g.*, *In re Wholesale Grocery Prod. Antitrust Litig.*, 707 F.3d 917, 923 (8th Cir. 2013) (emphasizing that the plaintiff's antitrust claims did not "rely on" or have an "intimate" and "intertwined" relationship with the franchise agreement containing the arbitration provision); *Tucker*, 4741 S.W.3d at 798 ("[Plaintiff's] claims against [Defendant] do not rely on the terms of the written agreement, but are premised on [Defendant]'s alleged failure

9

to comport with his duties . . . prior to the existence and consummation of the [written agreement]"). No language in the Employment Agreement suggests that Morgan consented to arbitrate her individual tort claims arising from actions which predate her employment and allowing Morgan to litigate her individual claims against Ferrell and Brueckmann does not threaten to "eviscerate" her arbitration agreement with Ferrellgas. In turn, to the extent Ferrell and Brueckmann seek to compel arbitration of Morgan's individual tort claims against them, the Court finds they lack standing to do so.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED** Defendants' Motion to Dismiss or, in the Alternative, Stay This Case and Compel Arbitration (Doc. #14) is GRANTED IN PART and DENIED IN PART. Specifically, the Court makes the following rulings:

Insofar as Defendants have moved to dismiss the case, their motion is denied.

Defendants' request to stay the proceedings pending arbitration is granted as to Plaintiff's claims against Ferrellgas, Inc., and Plaintiff is ORDERED to arbitrate Counts I & II against Ferrellgas. Upon completion of the arbitration proceedings, the parties shall promptly advise this Court if further proceedings are necessary or if the matter can then be dismissed. The Court also orders status reports be submitted to the Court quarterly.

As to Plaintiff's individual claims against Defendants Ferrell and Brueckmann in Counts III, IV, V, & VI, Defendants' motion is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
United States District Judge

Dated: January 13, 2020